UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR17-0323JLR |
| Plaintiff, | ORDER DENYING MOTION |
| v. | FOR COMPASSIONATE RELEASE |
| RONNIE LEE CRUICKSHANK, | |
| Defendant. | |

## I.  INTRODUCTION

Before the court is Defendant Ronnie Lee Cruickshank's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1).  (*See* Mot. (Dkt. # 56); *see also* Reply (Dkt. # 65).)  Plaintiff United States of America ("the Government") opposes the motion.  (*See* Resp. (Dkt. # 60).)  The court has considered the motion, the relevant portions of the record, and the applicable law.  Being fully advised, the court DENIES Mr. Cruickshank's motion for compassionate release.

//

## II.    BACKGROUND

On December 13, 2017, the Government charged Mr. Cruickshank with two counts of distribution of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(4)(B) and one count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  (*See* Indictment (Dkt. # 11).)  The Government accused Mr. Cruickshank of selling 98% pure methamphetamine to an undercover Drug Enforcement Administration officer on two separate occasions.  (*See* Presentence Investigation Report ("PSR") (Dkt. # 44) (sealed) ¶¶ 6-8.)  Mr. Cruickshank sold a half pound of methamphetamine to the undercover officer during the first controlled purchase and a pound of methamphetamine during the second controlled purchase.  (*See id.*)  Officers searched Mr. Cruickshank's residence in conjunction with his arrest for distribution and found a 9mm handgun.  (*See id.* ¶ 10.)

On May 30, 2018, Mr. Cruickshank pleaded guilty to one of the counts of distribution of methamphetamine and the count of felon in possession of a firearm.  (*See* Plea Agmt. (Dkt. # 38).)  On October 11, 2018, the court sentenced Mr. Cruickshank to 72 months of imprisonment and five years of supervised release.  (*See* Judgment (Dkt. # 51) (sealed) at 1-3.)  Mr. Cruickshank is currently housed at Federal Correctional Institution – Terminal Island. ("FCI-Terminal Island").  (Cruickshank Decl. (Dkt. # 47) ¶ 2.)  Mr. Cruickshank alleges that his expected release date is January 21, 2023, meaning that he has approximately 31 months remaining on his sentence.  (*See* Mot. at 2.)

Mr. Cruickshank's criminal history spans more than 30 years.  (*See* PSR ¶¶ 28-46.)  He has felony and misdemeanor convictions in 20 separate cases, including

1   for drug crimes, theft, assault, domestic violence, stalking, harassment, and violation of a

2   no contact order.  (*See id.*)  Mr. Cruickshank has one additional federal conviction for

3   conspiracy to manufacture methamphetamine that he pleaded guilty to in 2007.  (*See id.*

4   ¶ 44.)  Mr. Cruickshank was sentenced to 84 months' imprisonment for that crime.  (*See*

5   *id.*)  When Mr. Cruickshank was sentenced for his first federal drug crime in 2008 he

6   submitted a letter to Federal District Judge Robert Lasnik in which Mr. Cruickshank

7   expressed remorse, claimed that his criminal behavior was driven by his drug addiction,

8   and alleged that he intended to work on his sobriety so that he could be "a real,

9   productive member of the community" and good father to his children.  *See United States*

10   *v. Cruickshank*, CR06-0230RSL, Dkt. # 45-2 at 2-3 (W.D. Wash.).  Despite these

11   representations, Mr. Cruickshank distributed pound-level quantities of methamphetamine

12   in 2017 and illegally possessed a firearm after he was released from federal supervision

13   from his first federal drug conviction.  (*See* PSR ¶¶ 6-10.)

14       Mr. Cruickshank tested positive for the Coronavirus Disease 2019 ("COVID-19")

15   on April 28, 2020.  (*See* Resp., Ex. A (Dkt. # 62 (sealed)) at 2-3.)  According to his

16   medical records, his case was asymptomatic, and was "resolved" by May 10, 2020.  (*See*

17   *id.* at 2-3, 12.)  Mr. Cruickshank's counsel emailed a request for Mr. Cruickshank's

18   compassionate release to the Warden of FCI-Terminal Island on May 4, 2020.  (*See* Mot.,

19   Ex. 2.)  In that email, Mr. Cruickshank's counsel stated that "the COVID-19 conditions at

20   FCI Terminal Island and Mr. Cruickshank's age" constitute "extraordinary and

21   compelling circumstances" warranting Mr. Cruickshank's compassionate release.  (*See*

22   *id.*)  Outside of listing Mr. Cruickshank's age, Counsel did not mention any specific

1    health concerns that would place Mr. Cruickshank in a higher risk group for suffering

2    complications from COVID-19 in his email to the Warden.  (*See id.*)  Counsel for

3    FCI-Terminal Island responded to Mr. Cruickshank's request the following day and

4    indicated that FCI-Terminal Island would review Mr. Cruickshank's request as quickly as

5    possible, but also advised Mr. Cruickshank's counsel that FCI-Terminal Island had

6    "many" other cases to review.  (*See id.*)

7         Mr. Cruickshank filed his request for compassionate release in this court on May

8    28, 2020—less than 30 days after he sent his request to the Warden of FCI-Terminal

9    Island.  (*See* Mot. at 20.)  There is no evidence in the record indicating whether FCI-

10   Terminal Island or any other officials with the Federal Bureau of Prisons ("BOP")

11   responded substantively to Mr. Cruickshank's request.  (*See generally* Mot.; Resp.;

12   Reply.)

13        Mr. Cruickshank argues that he is entitled to compassionate release because (1)

14   FCI-Terminal Island is experiencing a significant COVID-19 outbreak; and (2) he is 60

15   years old and suffers from obesity, which places him at a higher risk of suffering serious

16   complications from COVID-19 if he contracts the disease again.[1]  (*See* Mot. at 5.)  Mr.

17   Cruickshank's medical records confirm that physicians at FCI-Terminal Island have

18   noted that Mr. Cruickshank "[a]ppears [o]bese."  (*See* Mot., Ex. 3, at 9-10.)  However,

19   there is no evidence in the record documenting the severity of Mr. Cruickshank's obesity.

20   (*See generally* Mot.)

21

22        [1] Although Mr. Cruickshank's motion states that he is 61 years old, counsel
     acknowledged that he is 60 years old in Mr. Cruickshank's reply brief.  (*See* Reply at 8 n.4.)

# III.   ANALYSIS

## A.   Standard for Compassionate Release

"'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (alterations in original; quoting 18 U.S.C. § 3582(b)).  As relevant to Mr. Cruickshank's motion, those circumstances are set forth in 18 U.S.C. § 3582(c)(1)(A)(i).  Effective December 21, 2018, the First Step Act of 2018 amended 18 U.S.C. § 3582(c)(1)(A) to permit an inmate, who satisfies certain statutorily mandated administrative exhaustion procedures, to file a motion with the district court for compassionate release.  *See* 18 U.S.C. § 3582(c)(1)(A). As amended, the statute now provides:

> (c) **Modification of an imposed term of imprisonment**.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, *or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier,* may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction;
>
> **********

//

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i) (italics added indicating the portion of the statute the First Step Act amended).

Thus, the statute now provides the court with authority to reduce a sentence upon the motion of a defendant if three conditions are met:  (1) the inmate has either exhausted his or her administrative appeal rights of BOP's failure to bring such a motion on the inmate's behalf or has waited until 30 days after the applicable warden has received such a request; (2) the inmate has established "extraordinary and compelling reasons" for the requested sentence reduction; and (3) the reduction is consistent with the Sentencing Commission's policy statement.  *See id.*

The Sentencing Commission's policy statement referenced in 18 U.S.C. § 3582(c)(1)(A)(i) is found in the United States Sentencing Guidelines ("USSG") § 1B1.13.[2]  The policy statement provides in relevant part:

[T]he court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

(1)(A) Extraordinary and compelling reasons warrant the reduction; or

---

[2] The Sentencing Commission is statutorily required to create the referenced policy statement.  *See* 28 U.S.C. § 994(t) ("The Commission . . . shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.  Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.").

(B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

(2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) The reduction is consistent with this policy statement.

USSG § 1B1.13.  Because Mr. Cruickshank is not at least 70 years old and was not sentenced under 18 U.S.C. § 3559(c), only sections (1)(A), (2), and (3) of the Sentencing Commission's policy statement are relevant to Mr. Cruickshank's motion.  Thus, under the policy statement, Mr. Cruickshank is entitled to relief if he demonstrates that (1) extraordinary and compelling reasons warrant a sentence reduction, (2) he is not a danger to the safety of others or the community, and (3) any requested reduction is consistent with the policy statement.  *See* USSG § 1B1.13(1)(A), (2), (3).

The Sentencing Commission's application notes to this policy statement provide further guidance.  Application Note 1 to USSG § 1B1.13 provides that "extraordinary and compelling reasons" for a sentence reduction exist when:

(A) Medical Condition of the Defendant.

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory).  A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,
(II) suffering from a serious functional or cognitive impairment, or
(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. 1B1.13 cmt. n.1.[3]

## B.   Exhaustion Requirement

The court denies Mr. Cruickshank's motion for compassionate relief based on his failure to comply with the exhaustion requirements in 18 U.S.C. § 3582(c)(1)(A). Because Mr. Cruickshank filed this motion on his own behalf, the court may consider this motion only if Mr. Cruickshank has "fully exhausted all administrative rights to appeal" or if he filed his motion 30 days after the BOP received his request for compassionate release. *See id.* Mr. Cruickshank emailed a petition for compassionate release to the Warden at FCI-Terminal Island on May 4, 2020 (Mot., Ex. 2), and filed this motion 24 days later, on May 28, 2020 (*see* Mot. at 12.) Mr. Cruickshank does not provide any evidence indicating whether BOP or FCI-Terminal Island responded to his request. (*See generally* Mot.) Thus, Mr. Cruickshank did not exhaust his administrative remedies or wait for a response from BOP for 30 days before filing his motion as required by § 3852(c)(1)(A).

---

[3] In subparts (B) and (C), the application note also addresses family circumstances and circumstances involving defendants who are at least 65 years old—neither of which are applicable to Mr. Cruickshank's motion. *See id.* In subpart (D), the application note also provides that the Director of BOP may determine that "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *See id.* Mr. Cruickshank does not contend that the Director of BOP has determined that an extraordinary or compelling reason for a reduction in sentence exists in his case.

1    Mr. Cruickshank argues that he should not have to strictly comply with the

2    exhaustion requirement because "[t]he required 30-day period will have expired before

3    the noting date of this motion," which allegedly makes this matter "ripe" for

4    consideration by the court.  (*See* Mot. at 2.)  The court disagrees.  The terms of

5    § 3582(c)(1)(A)(i) are clear.  Under that provision, a defendant may bring a motion for

6    compassionate release in federal court "after . . . the lapse of 30 days" from the receipt of

7    a request for compassionate release by the warden of the defendant's facility.  *See* 18

8    U.S.C. § 3582(c)(1)(A)(i).  Mr. Cruickshank did not wait 30 days before filing his

9    motion.  He waited 24 days and assumed, without citing any caselaw in support of his

10   position, that he could satisfy the exhaustion requirement so long as the court took more

11   than 6 days to rule on his motion.  (*See* Mot. at 2.)  That court rejects that interpretation

12   for the simple reason that it is inconsistent with the text of § 3582(c)(1)(A)(i).[4]

13   Because Mr. Cruickshank failed to comply with § 3582(c)(1)(A)(i)'s 30-day

14   exhaustion requirement before filing his motion, the court DENIES his motion for

15   compassionate release.

16   **C.    The United States Sentencing Commission's Policy Statement**

17   In addition, however, even if Mr. Cruickshank did exhaust his administrative

18   remedies, Mr. Cruickshank's motion is deficient for a second reason.  As noted above,

19

20   [4] Further, Mr. Cruickshank's premature motion deprived BOP of six days to review his
     case and signaled to BOP that he believed his request to the Warden for compassionate release
21   was futile, even though BOP had not yet had a fulsome chance to respond to the request.  If that
     kind of end-run around the 30-day exhaustion requirement became commonplace, it could create
22   a sense of inevitability of federal court oversight that would diminish BOP's incentive to provide
     fulsome review of requests for compassionate release in the first instance.

ORDER - 9

1  before granting compassionate release, the court must find that the defendant's release is

2  consistent with the United States Sentencing Commission's policy statement. *See* 18

3  U.S.C. § 3582(c)(1)(A)(i); *see also Riley v. United States*, No. C19-1522JLR, 2020 WL

4  1819838, at *5 (W.D. Wash. Apr. 10, 2020). Even if Mr. Cruickshank could demonstrate

5  that his obesity and age, in combination with the current conditions at FCI-Terminal

6  Island, constitute "[e]xtraordinary and compelling reasons" warranting his release under

7  subsection (1)(A) and that his release would be consistent with the policy statement under

8  subsection (3), he fails to demonstrate that he "is not a danger to the safety of any other

9  person or to the community" under subsection (2) of USSG § 1B1.13. *See United States*

10  *v. Gotti*, --- F Supp. 3d ----, 2020 WL 497987, at *6 (Jan. 15, 2020) (concluding that even

11  if a federal prisoner had met his burden of showing eligibility for compassionate release

12  due to his compromised medical condition, the court is not required to release him if he

13  continues to be a danger to community).

14        In determining whether the prisoner continues to be a danger to the safety of any

15  other person or to the community, subsection (2) of USSG § 1B1.13 points the court to

16  the factors listed in 18 U.S.C. § 3142(g). *See* USSG § 1B1.13. Under section 3142(g),

17  relevant factors that the court should consider here include: the nature and circumstances

18  of the crime charged, including whether the offense involves a minor victim, the

19  defendant's history and characteristics, including his character, his physical and mental

20  condition, his family and community ties, his past conduct, and his criminal history. *See*

21  18 U.S.C. § 3142(g). As discussed below, a review of these factors precludes the court

22  //

1  from finding that Mr. Cruickshank is not a danger to the safety of others and the

2  community.

3        The most significant factor leading the court to conclude that Mr. Cruickshank

4  remains a danger to others and the community is his lengthy and serious criminal record.

5  Mr. Cruickshank has been committing crimes since the age of 24.  (*See* PSR ¶¶ 28-46.)

6  He has 20 combined state and federal convictions.  (*See id.*)  Most notably, Mr.

7  Cruickshank has now been convicted twice in federal court on drug charges, and his

8  conduct appears to be escalating in severity given that his most recent conviction

9  included a firearms charge in addition to the charge for distribution of pound and

10 half-pound quantities of methamphetamine.  (*See id.* ¶¶ 6-10.)  Mr. Cruickshank also has

11 convictions for assault, domestic violence, harassment, stalking, and violations of a no

12 contact order on his record.  (*See id.* at ¶¶ 28-46.)

13       Mr. Cruickshank makes no effort to provide context for any of his specific

14 convictions or explain why he is not a danger to the community despite his history of

15 violence, harassment, firearm, and drug-related offenses.  (*See generally* Mot.)  Instead,

16 he argues generally that his criminal history is related to his prior drug addiction and that

17 the recent death of his son has forced him to reconsider his addiction and life of crime.

18 (*See* Mot. at 17.)  He also notes that he has no disciplinary infractions from his recent

19 stint in custody.  (*See id.* at 18.)  Although the court understands the impact that a drug

20 addiction may have on criminal conduct and hopes that Mr. Cruickshank's desire to

21 change for the betterment of his family is sincere, the court notes that this is not the first

22 time that Mr. Cruickshank has informed a federal court that he intends to become sober

1  and change his ways for the sake of his family.  He made similar representations in front

2  of Judge Lasnik in 2008 regarding his conviction for manufacturing methamphetamine.

3  *See United States v. Cruickshank*, CR06-0230RSL, Dkt. # 45-2 at 1-3) (W.D. Wash.) ("I

4  want so badly to be a real, productive member of the community.  I want to be a good

5  father to my children.").  Yet, after he was released from federal custody, he committed

6  arguably more severe drug and firearms offenses within just a few years.  The court also

7  commends Mr. Cruickshank for his recent good behavior while incarcerated but

8  concludes that his recent behavior in custody does not outweigh his lengthy criminal

9  record.

10       Given Mr. Cruickshank's lengthy history of serious criminal behavior and his

11  prior misrepresentations about his willingness to course-correct, the court cannot

12  conclude that Mr. Cruickshank's statements of remorse, efforts to educate himself while

13  incarcerated, disciplinary record while incarcerated, indications of familial support, or

14  any other grounds that Mr. Cruickshank submits, mitigate his continuing danger to others

15  and the community.  Thus, on this independent ground, the court also DENIES Mr.

16  Cruickshank's motion for compassionate release.

17  //

18  //

19  //

20  //

21  //

22  //

ORDER - 12

# IV.   CONCLUSION

Based on the foregoing analysis, the court DENIES Mr. Cruickshank's motion for compassionate release (Dkt. # 56).

Dated this 17th day of June, 2020.

JAMES L. ROBART
United States District Judge